**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| CECILIA HERNANDEZ, on behalf of herself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SONIC CORP. and SONIC RESTAURANTS, INC.,<br><br>Defendants. | Case No.: 5:20-cv-348<br><br>CLASS ACTION<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *et seq.***<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

Plaintiff Cecilia Hernandez ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants Sonic Corp. and Sonic Restaurants, Inc. (collectively "Sonic" or "Defendants"), in negligently, and/or willfully contacting Plaintiff through text messages on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff alleges as follows upon personal knowledge as to her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## **NATURE OF THE ACTION**

1. The TCPA strictly forbids nuisance text messages exactly like those alleged in this Complaint – intrusive text messages to private cellular phone, placed to numbers obtained without the prior express consent of the recipients.

2. In a misguided effort to solicit business, Sonic routinely contacts individuals through mass text messaging campaigns with automatic telephone dialing equipment.  However, Sonic regularly sends these text messages to cellular telephones, without consent, let alone prior express written consent, in violation of the TCPA.

3. Sonic's violations caused Plaintiff and members of the Class to experience actual harm, included aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing text messages, as well as the violation of their statutory rights.

4. Plaintiff and members of the Classes suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Defendants' conduct, and is likely to be redressed by a favorable decision in this action.

5. Plaintiff seeks an injunction stopping Sonic from sending unsolicited text messages, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012). Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of the Defendants, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

7. The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transact significant amounts of business within this District, and the conduct and events giving rise to the claims occurred in this District.

## PARTIES

8. Plaintiff Cecilia Hernandez is, and at all times mentioned was, a resident of the State of California, County of Riverside. She is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

9. Defendant Sonic Corp. is a Delaware corporation with its principal place of business located at 300 Johnny Bench Drive, Suite 400, Oklahoma City, Oklahoma 73104. Sonic Corp. is a "person" as defined by 47 U.S.C. § 153 (39).

10. Defendant Sonic Restaurants, Inc. is a Delaware corporation with its principal place of business located in Oklahoma City, Oklahoma. Sonic Restaurants, Inc. is a "person" as defined by 47 U.S.C. § 153 (39).

11. Defendant Sonic Restaurants, Inc. is a wholly owned subsidiary of Sonic Corp.

## THE TELEPHONE CONSUMERS PROTECTION ACT OF 1991 ("TCPA") 47 U.S.C. §§ 227 *et seq.*

12. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

13. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

14. As recognized by the Federal Communication Commission ("FCC") and the Courts, a text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

15. According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

16. One of the most bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for transmission and receipt of short text messages to and from wireless telephones.

17. SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text message are received virtually anywhere in the world.

18. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

19. Moreover, the transmission of an unsolicited SMS text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power which shortens the battery life; and requires expending a quantifiable amount of energy (electricity) to recoup the battery power lost as a result of receiving such a message.

---

[3] *In Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (2003) ("2003 TCPA Order").

20. The TCPA makes it "unlawful for any person within the United States ... (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

21. "A person or entity" can bring a claim to recover the greater of actual damages or $500 for a violation of § 227(b)(1)(A)(iii). *Id.* § 227(b)(3). A court may award treble damages for a willful or knowing violation. *Id.*

22. The TCPA defines "automatic telephone dialing systems" (ATDS) as follows: (1) The term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *See* Pub. L. No. 102-243, § 227, 105 Stat. 2394, 2395.

23. "[T]he statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).

24. Prior express consent is an affirmative defense on which Defendants bear the burden of proof. The type of consent required depends on the content of the message. If the message contains advertising or is telemarketing, the sender must have secured, prior to sending the message, the signature of the recipient in a written agreement that includes several specified disclosures. *See* 47 C.F.R. § 64.1200(f)(8).

25. As of October 16, 2013, express **written** consent is required to make any such telemarketing calls.[4] The express written consent must be signed and be sufficient to show the consumer received clear and conspicuous disclosure of the

---

[4] *In Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1837 ¶ 18, 1839 ¶ 20, 1858 ¶ 71 (2012) ("2012 FCC Order").

significance of providing consent and must further unambiguously agree to receive future phone calls.[5]

## FACTUAL ALLEGATIONS

26. Sonic is a fast food drive-in restaurant that sends promotional and marketing text messages to consumers in an attempt to solicit business.

27. Unfortunately, in Sonic's attempt to solicit business text messages are sent to consumers without having the necessary prior express written consent and in violation of the TCPA

28. The TCPA was intended to give individuals control over how and where they receive text messages. When Sonic sends text message calls to consumers without their consent, they fail to address or respect the limitations imposed by the TCPA. In doing so, it takes control away from the consumers and violates both the spirit and the letter of the TCPA.

29. On or around December 2017, Plaintiff began receiving unsolicited promotional text messages from Sonic from the SMS code 876-642 to her wireless phone ending in the number 4347, for which Plaintiff provided no consent to call, in an attempt to solicit her business.

30. Defendants utilized the SMS Code 876-642 to send promotional text messages to Plaintiff. This number is owned or leased by Sonic.

31. The unsolicited text messages Sonic sent to Plaintiff on her mobile telephone were solicitations for purchases of food and drink items and on some occasions included coupons or promotional one day only sales.

32. On December 1, 2017 at 8:05 a.m., Plaintiff received the following unsolicited text message from Sonic:

---

[5] 2012 FCC Order at 1844 ¶ 13.

> The SONIC Double Feature: single-patty Cheeseburger & Sm Shake for $3.99! Lmt tome @ part' drive-ins. + Tax / addons. More: [link] HELP/STOP: 8447887525.

33. Plaintiff also received similar unsolicited text messages from Sonic on December 6, 2017, December 8, 2017, December 10, 2017, December 14, 2017, December 20, 2017 and December 27, 2017.

34. On January 3, 2018 at 8:02 a.m., Plaintiff received the following unsolicited text message from Sonic:

> Get fizzy with it! Snag a Large SONIC Fruit Fizz for $0.99! Valid 1/3 only @ @ part' drive-ins. HELP/STOP: 8447887525

35. Plaintiff continued to approximately three to nine unsolicited text messages per month from December 2017 through the present.

36. One of the more recent unsolicited text messages received by Plaintiffs was on February 6, 2020, which stated:

> Today @ Sonic ½ price 3 or 5 pc Crispy Tenders! Must mention @part' drive-ins or use promo code CRISPY in app! Valid 2/6 + tax/addon HELP/STOP call    8447887525.

37. Plaintiff has never provided Defendants with her phone number or consented to text messages from Defendants on her mobile telephone.

38. Sonic places these unsolicited text messages using equipment that has the capacity to store or produce telephone numbers, and to dial such numbers, without any need for human intervention.

39. These unsolicited and promotional phone calls and text messages placed to Plaintiff's mobile telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1), which had the capacity to produce or store numbers randomly or sequentially, and to place telephone calls and/or text message calls to Plaintiff's cellular telephone by dialing such numbers.

40. The unsolicited and promotional text messages placed to Plaintiff's mobile telephone also featured a prerecorded voice as the text messages were pre-populated with uniform text.

41. The telephone number that Defendants, or their agents, texted was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

42. These text messages constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

43. Plaintiff did not provide Defendants or their agents prior express consent to receive unsolicited phone calls or unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(A).

44. These text messages by Defendants or their agents therefore violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and on behalf of and all others similarly situated ("the Class").

Plaintiff represents, and is a member of the Class, consisting of all persons within the United States who received any unsolicited, promotional text message from Defendants or their agents on their cellular telephones through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3) or featuring prerecorded voice messages, which text messages by Defendants or their agents were not made for emergency purposes or with the recipients' prior express consent, within four years prior to the filing of this Complaint through the date of final approval.

46. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes members

number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

47. Plaintiff and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its agents, illegally contacted Plaintiff and members of the Class via their cellular telephones by using unsolicited promotional text messages, thereby causing Plaintiff and members of the Class to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and members of the Class previously paid, and invading the privacy of said Plaintiff and the members of the Class. Plaintiff and the members of the Class were damaged thereby.

48. This suit seeks only statutory damages and injunctive relief for on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

49. The joinder of the members of the Class are impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Classes can be identified through Defendants' records or Defendants' agents' records.

50. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual members of the Class, including the following:

    a. Whether, within the four years prior to the filing of this Complaint through the date of final approval, Defendants or their agents sent promotional text messages without the recipients' prior express consent (other than a text message made for emergency purposes or made with the prior express consent of the called party) to a Class member using

any automatic telephone dialing system, to any telephone number assigned to a cellular telephone service;

b. Whether the equipment Defendant, or their agents, used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

c. Whether Defendants, or their agents, systematically sent promotional text messages to persons who did not previously provide Defendants with their prior express consent to receive such text messages;

d. Whether Plaintiff and the Class were damaged thereby, and the extent of damages for such violation; and

e. Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

51. As a person that received at least one unsolicited promotional text message to her cellular telephone without prior express contest, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

52. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, members of the Class could afford to individually seek legal redress for the wrongs complained of herein.

53. A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Class-wide damages are essential to induce Defendants to comply with federal law. The interest of members of the Class in individually controlling the prosecution of separate

claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

54. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT 1

### NEGLIGENT VIOLATIONS OF THE TCPA
#### 47 U.S.C. §§ 227 ET SEQ.

55. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. Defendants made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone number of Plaintiff and the other members of the Class without their prior express written consent.

57. These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendants was able to send thousands of text

messages simultaneously to thousands of consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of the Plaintiff.

58. The foregoing acts and omissions of Defendants and their agents constitute multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

59. As a result of Defendants', and Defendants' agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT 2

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

61. Plaintiff incorporates by reference paragraphs 1-54 of this Complaint as though fully stated herein.

62. Defendants made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone number of Plaintiff and the other members of the Class without their prior express written consent.

63. These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendants were able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of the Plaintiff.

64. The foregoing acts and omissions of Defendants and their agents constitute multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq.*

65. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

66. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiff respectfully requests the Court to grant Plaintiff and the Classes the following relief against Defendants:

### FIRST COUNT FOR NEGLIGENT VIOLATION OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

67. As a result of Defendants', and Defendants' agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

68. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### SECOND COUNT FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

69. As a result of Defendants', and Defendants' agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

70. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

\* \* \*

71. Any other relief the Court may deem reasonable, just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendants take affirmative steps to preserve all text messages, recordings, data, emails, documents and all other tangible things that relate to the allegations herein, Plaintiff or the putative class members, or the sending of text messages, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff or the account in question, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials, and notify the undersigned of the circumstances immediately so that counsel may take appropriate action. This demand shall not narrow the scope of any independent document preservation duties of Defendants.

Dated: February 20, 2020

*s/ Ronald A. Marron*
By: Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
ALEXIS M. WOOD
KAS L. GALLUCCI

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**Attorneys for Plaintiff
and the Proposed Class**